SILAS STEEN, Administrator, *vs.* SILAS L. STEEN et al.

W. S. presented an account to the probate court of Rankin county, which purported to be a final settlement of his administration of the effects of the estate of R. S., deceased; and the only entry or memorandum shown by the record, in relation to the settlement, is an entry made upon the account itself, of "Received and ordered for record;" to this the signature of the probate court is attached, but is entirely without date, and is not entered upon the minutes of the court. *Held*, that this cannot be regarded as an order or judgment of the court, and is no evidence of a settlement or allowance of the account by the court.

If such an entry had been made upon the minutes of the court in the same words, it could not be regarded as an order or judgment of the court allowing the account filed as the final settlement of the administrator.

The statute in relation to the allowance of accounts, by the probate court, of administrators, guardians, &c., says: "and the court, on due proof of notice as aforesaid, and no objection being made to the account as stated, may decree an allowance thereof." Hutch. Co. 682, § 12. A mere order of "received and ordered for record," entered upon the minutes of the court, is not an order or decree of allowance within the meaning of the statute.

Steen *v.* Steen et al.

It has been repeatedly held by this court, that no judgment is valid or binding against a party, unless he had notice, either actual or constructive, of the proceeding against him. *Held,* that without such notice, the judgment is a nullity.

It is a settled rule, that the record of a judgment must show upon its face that the court had jurisdiction of the person; and unless it so appears, the judgment is a nullity.

In this State, actual notice is not required to be given by an administrator to the parties interested, of the presentation of his final account for allowance.

The probate court, in making a final settlement of a guardian's or administrator's account, proceeds not *in rem;* but the decree or judgment, when pronounced, is personal, and acts *in personam.*

An order, granting letters testamentary, or of administration, may be considered a proceeding *in rem.*

*Jones et ux.* v. *Irvine's Executors,* 1 Cushm. 361, cited and confirmed by the court.

This court has heretofore held, that the constitution of the State confers exclusive jurisdiction upon the probate court in all matters testamentary and of administration, and in the settlement of accounts of administrators, guardians, &c. 2 How. 856; 3 Ib. 252; 5 S. & M. 520, cited and confirmed.

It is settled by this court, that until a final settlement of his account, no action can be maintained by the distributees against the administrator to charge his sureties upon his administration bond.

It was the duty of W. S. in his lifetime, to have rendered to the probate court a full and final account of his proceedings as administrator; but having failed to do so, his personal representative must necessarily perform that duty.

Reason and sound policy indicate, that the representative should render the account in the same tribunal, before which alone the party he represents could have been required to appear in his lifetime. *Held,* that the administrator's death did not oust the jurisdiction of the probate court.

In error from the probate court of Rankin· county; Hon. James Finley, judge of the probate court, &c.

This was a petition filed in Rankin probate court by defendants in error, as distributees of Robert Steen, deceased, against the plaintiff in error, as administrator of William Steen, deceased, for a settlement of the administration account of said William Steen, as administrator of said Robert Steen.

The administrator of the deceased administrator is required to make the final settlement of the estate of Robert Steen, deceased. There is this averment in the petition :

" Your petitioners further state, that said William Steen, administrator, was cited by the probate court of said county to

the April term, 1841, thereof, to make settlement of his administration of said estate; and afterwards, at the June term, 1841, of said court, without any notice to your petitioners, and without any notice by publication or advertisement, as required by law, of his intention to make settlement of said estate, or to file an account of his final settlement of his administration thereon at said June term, 1841, and wholly unknown to your petitioners, though then citizens of said county and relatives and neighbors of said administrator, the said William Steen presented a pretended account of his administration to said court, which is here referred to as Exhibit E. to this petition," &c. They charge said pretended account to be wholly irregular, unjust, and fraudulent, and unsupported by any legal voucher; that it was never examined, audited, and allowed, as required by law, and is fraudulent and void; that said William Steen died without making any settlement of his said administration; and contains many charges of fraud and mismanagement, &c. &c.

The defendant appeared and answered the petition, and this was his reply to the charge above quoted:

" It is true that said William Steen was cited, as represented in said petition, to make settlement of said estate, and respondent states that said William Steen did afterwards present an account of his administration to this honorable court, which was intended for a final settlement of said estate, and the said account was by the court received and ordered to be recorded as a final settlement; but this respondent has no certain knowledge or information as to what notice was given previous to the presenting and receiving of said account," &c.

Upon the petition and answer filed, the probate court ordered and decreed that the said account presented by William Steen, administrator, &c., at the June term, 1841, be rejected and disallowed by the court; and that the defendant in the court below (Silas Steen) be required to make a final settlement, as prayed for by the petitioners, and he have until the next term of the court to file his account.

The defendant then filed his account as required, to which various exceptions were taken on behalf of the petitioners;

whereupon the court referred the same to auditors to be restated. The auditors restated the account, and reported a large sum due the estate of Robert Steen from said William Steen, in the matter of his administration. No exceptions were taken or filed, nor objections made to the doings or report of the auditors. The account, as restated and reported by the auditors, was duly allowed and confirmed by the court, and ordered to be recorded, and that the cost be paid by the defendant (Silas Steen) out of the estate, and he be allowed commissions of one per cent., to be deducted from the balance.

An order or decree was then entered for the distribution of the balance found due among the distributees. In the matter of this final settlement, due notice was given by process and publication to all parties interested. From this decree, the defendant (Silas Steen) prayed this writ of error.

*D. Mayes*, for appellant.

The decree should be reversed, for these reasons: —

First. By the petition, the answer, and the exhibit mentioned in the abstract, it appears that, in 1841, a citation was ordered to issue against the administrator to make a settlement; that he returned a final settlement, which was "received and ordered for record."

The court had not power to set it aside at a subsequent term. *Turnbull* v. *Endicott et al.*, 3 S. & M. 302.

Second. But the court might treat it as a nullity, if it is utterly void. Can it be so considered as the case now stands on the record? It cannot, for —

1st. "Any one who asserts that the judgment of a court of competent jurisdiction is void, must produce the record. This has not been done. The party relies solely on his petition; and, although it may be true, still it is not such evidence as will justify us in declaring the judgment void." Chief Justice Sharkey, in *Smith* v. *Denson*, 2 S. & M. 338. See also 6 Ib. 259.

This being true in a case of the sale of land, where the probate court is a court of limited and special jurisdiction, *a fortiori* it is true as to settling the account of an adminis-

Steen *v.* Steen et al.

trator; for, as to that, it is a court of general and exclusive jurisdiction, as will hereafter appear. The case of *Smith* v. *Denson* is full to this point, and would remove the necessity of further remark, if this objection could not be removed after reversal. The case has not been well prepared, and, having inspected the record of 1841, I think a very clear case for the administrator will be presented, when the whole record shall be produced.

But if that record was exhibited, and no notice appeared, still the settlement cannot be treated as void, for the absence of such proof of notice.

Third. The error, in considering the final settlement void, if the notice does not appear, proceeds from the want of due discrimination. The cases of orders by the probate court, to sell lands, have been confounded with cases of the settlement of accounts of executors and administrators. In the former class it is, as will hereafter appear, a court of special limited jurisdiction, and the notice must appear of record, for reasons which will hereafter be assigned. In the latter, it is a court of general and exclusive jurisdiction, and the notice need not appear, but will, from the fact of the decree, be presumed. This I proceed to show.

The constitution, article four, section eighteen, declares : " A court of probates shall be established in each county of this State, with jurisdiction in all matters testamentary, and of administration."

The statute of 1833 (How. & Hutch. 468, § 1) provides, that : " There shall be established in each county of this State a court of probates, to be styled, ' The probate court of the county of ———— ; ' with such jurisdiction to said courts, within their respective counties, as is prescribed to them in the aforesaid article of the constitution."

These provisions constitute it a court of general jurisdiction, in the technical sense of the term, as to the settlement of accounts of administrators.

In the case *Ex parte Tobias Watkins*, 3 Pet. R. 207, Chief Justice Marshall, with the unanimous concurrence of the court, lays down the rule, that if a court be, 1st. A court of record,

and, 2d. Have general jurisdiction of the subject-matter; it is, as to such matter, a court of general jurisdiction; that its judgments are binding on all the world until reversed, no odds how erroneous they may appear to be. That it is not necessary that all the facts 'appear of record, and that even an apparent want of jurisdiction can only avail the party on writ of error. This, he says, is an acknowledged principle, and that the cases are numerous to that effect.

In the case last cited, that of *Kemp's Lessees* v. *Kennedy et al.*, 5 Cranch, R. 173, 2 Cond. R. 223, is cited, commented on, and fully approved. The court of common pleas of New Jersey is not a court of general criminal jurisdiction, but it has jurisdiction over all cases of treason, and confiscation for that offence. It was contended that its jurisdiction in the case of *Kemp's Lessees* v. *Kennedy*, not appearing on the record, the judgment confiscating the estate was void. Chief Justice Marshall says : " The law respecting the proceedings of inferior courts, according to the sense of that term as employed in the English books, has been correctly laid down. The only question is, Was the court in which this judgment was rendered " an inferior court in that sense of the term?" After stating, that all courts from which an appeal lies, are inferior courts in relation to the appellate courts before which their judgments may be carried, he adds : " But they are not, therefore, inferior courts in the technical sense of those words ; " and the court decided, without a dissenting voice, that with respect to treason and confiscation, it was a court of general jurisdiction, not an inferior court in the technical sense, and presumed in favor of its judgments. The probate court, as far as the settlement of administrator's accounts is concerned, is no more an inferior court in this sense, than is the superior court of chancery. They are each courts of record, the one having exclusive jurisdiction over one class of subjects, the other over another. The original jurisdiction of each, in its constitutional sphere, is exclusive, and from each is given an appeal to the high court, and to no other.

That the jurisdiction of the probate court is exclusive, is settled in *Blanton* v. *King*, 2 How. R. 856 ; *Carmichael* v.

*Browder*, 3 Ib. 252; and the judgment of a court of exclusive jurisdiction, precisely on the point, is conclusive on all the world until reversed. 1 Phil. Evid. 242.

1 Greenl. on Evid. 656, § 550, is as follows: " In regard to the decrees and sentences of courts exercising any branch of the ecclesiastical jurisdiction, the same general principles govern which we háve already stated. The principal branch of this jurisdiction in existence in the United States, is that which relates to matters of probate and administration; and as to these the inquiry, as in other cases, is, whether the matter was exclusively within the jurisdiction of the court, and whether a decree or judgment has directly been passed upon it. If the affirmative be true, the decree is conclusive. Where the decree is in the nature of proceedings *in rem*, as is generally the case in matters of probate and administration, it is conclusive, like those proceedings, against all the world." And see *Cowden* v. *Dobyns*, 5 S. & M. 82. This doctrine is fully confirmed in 2 Smith, Lead. Cases, 440, 497, Amer. edit. of 1847.

In Pennsylvania it is well settled, that every presumption shall be indulged in favor of the jurisdiction of the probate courts in cases where they have a general jurisdiction, since they have, by statute, been made courts of record. *McPherson* v. *Cunliff*, 11 Serg. & Rawle, 432; *Franks* v. *Groff*, 14 Ib. 184.

The consequences of a defect of jurisdiction are the same, whether a court be of superior or inferior jurisdiction. The distinction lies in the mode of reaching the defect. In regard to superior courts their jurisdiction is presumed till the contrary appears; whereas the jurisdiction of inferior courts is never presumed, but must be proved. *Bloom* v. *Burdick*, 1 Hill, N. Y. R. 130.

In addition to the authorities before referred to, to show that a court of record having general jurisdiction of the subject-matter is in the technical sense of the term, as here employed, a superior court, I would ask the serious attention of the court to the language of Chief Justice Marshall in *Kemp's Lessees* v. *Kennedy et al.*, before cited.

Take the foregoing as a test, and is the probate court as to the settlement of the accounts of an administrator an inferior

court in the technical sense? It is not as to that subject a court of special and limited jurisdiction.

Its jurisdiction is general, full, and exclusive. Nor is it created on such principles that its judgments taken alone are entirely disregarded, as will abundantly appear by consulting the authorities before cited for a different purpose.

Not so, however, as to its power and jurisdiction to "order and direct" the sale of lands for the payment of debts. Its jurisdiction on that subject is not general and full, but special and limited. It may and must settle the accounts of administrators in all cases. It can only "order and direct" the sale of lands in special cases and under peculiar circumstances, namely:

By the common law, an executor or administrator had no power over the real estate of the testator or intestate. It vested in the heir or devisee, and could, in no event, be applied by the personal representative to the payment of debts. By statute (Hutch. Code, 666, §§ 98–101) a new and special, limited power is conferred on the executor or administrator to sell real estate. This power is made to depend on the concurrence of these circumstances: —

1st. The executor or administrator discovering or believing the personal estate insufficient to pay debts, he shall exhibit, on oath, a true account of the personal estate and debts to the probate court.

2d. The court shall order a citation to issue, directing all persons interested in the land, to appear at a certain day, &c., to show cause, &c.

3d. The citation shall be set up in three of the most public places in the county in which the lands are, for thirty days, and published in a newspaper of the State for the same length of time.

4th. The court shall then, at the time specified, hear the proofs of the executor or administrator, or other person interested, and if found that the personalty is insufficient to pay the debts, shall order the executor or administrator to sell land.

These are special conditions, upon which the limited power to divest the heir or devisee of his real estate, and to empower

the executor or administrator to sell it, is made to depend by the statute. It is only under the special circumstance that the power exists, and only in the mode directed by the statute can it be exercised, for there is no principle of common law or of ecclesiastical power or usage on the subject.

Where steps are authorized by statute, in derogation of the common law, by which the title of one to land is to be divested and transferred to another, every requisite having the semblance of benefit to the former must be strictly complied with. *Atkins* v. *Kinnan,* 20 Wend. 241 ; and see, also, *Ford* v. *Walsworth,* 15 Ib. 449 ; *Dakin* v. *Hudson,* 6 Cow. R. 221; *Rea* v. *McEachron,* 13 Wend. 465.

In the proceeding of 1841, the court acted judicially. It was a proceeding in the due course of administration, had under the statute H. & H. 399, §§ 50, 66, and 404. The statute, after directing notice, and the manner in which it shall be given, proceeds : — " And the court, on due proof of notice, as afore-said, and no exception being made to the account, as stated, may decree an allowance thereof." The question, what is due proof, is a judicial question, the decision of which is expressly referred to the probate court. It therefore acts judicially, and its determination of the question is final and conclusive until reversed. *Jackson* v. *Robinson,* 4 Wend. 440.

This point does not merely receive countenance from, but is the inevitable result of the case of *Griffith's Administrator* v. *Vertner and Wife,* 5 How. 736. In that case, the court decides that by the notice, " time and opportunity is given them (the distributees) to protect their rights, and all persons interested are parties to an administration from the beginning."

The preceding view throws out of my way all those cases in which this court has decided, that the record must show every step required by law, to sustain the sale of land by an executor or administrator.

If in cases of administration every fact must appear of record, upon the existence of which the jurisdiction of the court depends, or the proceeding is void, nine tenths of the probates of wills and grants of administration are void.

Wills are to be proved : —

44*

1st. In the county in which the testator had his mansion-house, or known place of residence.

2d. If he have none such, and lands are devised, it shall be proved in the orphans' court of the county in which the land lies.

3d. If no land be devised, then in the orphans' court of the county where the testator shall die, or that wherein his or her estate, or the greater part thereof, shall be. Hutch. Code, 650.

The jurisdiction to grant administration belongs only : —

1st. To the probate court of the county in which the intestate had, at the time of his or her death, a mansion-house or known place of residence; and

2d. If he shall have none, then to the probate court of the county where he shall die, or in that where his estate or the greater part shall be. Hutch. Code, 655.

These statutes received their construction in *Wright* v. *Beck,* 10 S. & M. 280.

Probably in no case in Mississippi does it appear from the record that the deceased had, at the time of his death, a mansion-house or known place of residence in the county in which administration was granted. The precedents now followed do not make it appear. North on Probates, 323. If my position is not sustained, all those grants are void for want of jurisdiction. In the present case, it is not even alleged in the petition, that William Steen had a mansion-house or place of residence, or estate, or that he died in Rankin county. The probate court, then, by the argument of my adversary, had not jurisdiction. The grant of administration to my client was void, and being void, he could not be called before that court to account. The whole foundation of their proceeding is swept away by their position. His having applied for administration makes no odds. Consent cannot give jurisdiction of the subject-matter, and there is no estoppel, for estoppel by deed or record, must extend to each party, or applies to neither. It is different where the estoppel is by matter *in pais.*

Fourth. An administrator of an administrator cannot be called before the probate court to settle the administration accounts of his intestate.

It may be regarded as an axiom in judicial philosophy, that

every proceeding in a court of justice has some end in view, and if there is no legitimate end, the law gives no proceeding. The proceedings are but means to reach an end. " The very object of an administration is to bring the whole personal estate to an adjustment preparatory to a distribution."   Ch. J. Sharkey in *Griffith's* `Administrator v. Vertner and Wife*, 5 How. R. 738.   Now the administrator of the administrator cannot make distribution ; and it is, therefore, an idle thing to call on him to make a statement preparatory to that which he cannot do.   In *Green, Administrator*, v. *Tunstall*, 5 Ib. R. 651, this court says : " It (the law,) never could have been designed to confer upon the court the right' to call in third persons, who are under no obligations, and bear no official relation to the court.   The administrator is liable to be proceeded against, in the mode pointed out, because, being an officer of the court, it can act upon him and cause his appearance.   The sureties are in no way amenable to the court."   As to the first adminis-tration, Silas Steen was a third person, under no obligations, and bearing no official relation to the court.   His being admin-istrator of the administrator, created no official relation beyond the administration of the estate of his intestate.   He was not thereby rendered administrator of the first intestate, and, there-fore, bore no official relation as such.'   It surely cannot be that the court having jurisdiction over him as A.'s administrator, will enable it to bring him in, and make him account as B.'s administrator.   For this, there is no analogy in American jurisprudence.   Its only analogies are to be found in the arti-fices by which the king's bench and exchequer usurped juris-diction in cases. *inter partes*, of a private nature, in England. The ecclesiastical courts may have proceeded by this analogy, but we have it not.   Death having deprived the probate court of the power to proceed to settle the accounts, the courts of common law, or, if more suitable, a court of equity, will take cognizance.   The first, by suit on the bond for breach of its condition ; or, the latter, to settle a complicated account, to which the proceedings in a court of law are not well adapted.

Fifth. But the probate court, here, decreed, that Silas Steen make distribution of the first estate.   To make distribution is

an act of administration, and he was not administrator of the estate of the petitioner's ancestor. If it is to be regarded, that this is but a decree that he pay a sum in discharge of the indebtedness of his intestate, arising from mal-administration, it then becomes a clear case of error, for the distributees, as mere creditors, cannot sue in the probate court.

*Potter*, *Ware*, and *Harper*, for appellees.

No errors are assigned, and we can but conjecture the points on which this writ is prosecuted.

There are several reasons why the account filed by William Steen in 1841, as his final account, cannot be regarded by this court as a bar to the accounting sought by the petitioners. One is, that the former account and orders, if any, thereon, are not to be found in this record; it cannot, therefore, be determined here, whether that was a final settlement or not. A main one is, that the matter was without notice, wholly *ex parte* and void as to these petitioners. The judge of probate is by law required to keep a docket, in which shall be entered all such applications, and to direct the necessary notices and citations to issue, that all interested may have day to show cause against the proposed settlement. H. & H. 399, § 50. The judge is to order such things to be done, and his directions in the premises are spread, as other orders, upon the record. The administrator is required to give due notice of his intention to present his final account for allowance, and he is to give such notice in such manner " as the said judge of probate shall have directed." H. & H. 403, § 66. Of course, the order directing the manner of notice goes upon record, for it is an order. If the administrator shall present due proof of such notice given, and no exceptions are taken to the account, it may be allowed. Ib. The proof of notice must also, conformably to the usage in probate courts, go upon record. Like courts of chancery, proceedings before it are, except in cases excepted by statute, all upon paper. Under our statute and practice these things must appear : —

1. The account audited and examined by the judge, and reported to the proper term for allowance.

2. An order of the judge, directing the manner and time of notice to be given.

3. Proof of due notice given, as ordered by the judge.

4. The record must show a compliance with the statute, that the court had jurisdiction of the cause and parties interested, and did decree allowance of the account. Constructive notice being allowed, a strict compliance with the law and the directions of the judge must be shown; nothing will be presumed. 1 How. 60; 5 Ib. 736; 2 S. & M. 287, 326; 6 Ib. 259; 7 Ib. 454, 455; 5 Alabama, 473, which is upon a similar statute, and fully sustains the foregoing propositions. *Neal* v. *Wellons*, 12 S. & M. 649; *Fort* v. *Battle*, 13 Ib. 133.

It is quite manifest, that petitioners were not bound by that settlement, unless they were parties to it, or duly notified. If defendant relied on such a settlement, it was for him to show it to be valid and obligatory upon the petitioners; a thing he does not set up in his answer, nor attempt to prove. On the contrary, the answer admits there was no proof in the record of any notice whatever; for he says he has no knowledge or information touching the notice, as he could not say if the proof of notice was upon the record. There is, therefore, no pretence to call upon this court to presume that the probate court erred in disregarding the pretended former settlement, and compelling the defendant to settle.

The previous settlement being void, petitioners were entitled to compel a final settlement, by a proper original proceeding for that purpose. *Washburn* v. *Phillips*, 5 S. & M. 600; *Pendleton* v *Prestidge*, 12 Ib. 302; Ib. 649.

It was proper for petitioners to compel the administrator of the deceased administrator to settle the administration account of the latter upon the estate of their ancestor; no other proper mode of settlement can be suggested, and the defendant was subject to suit in the proper forum for the settlement of this account of his intestate, precisely as he is subject in the matter of any other demands against the estate of that intestate. The court of chancery could have no jurisdiction, there being no other defendant than the administrator of William Steen, and the liability arising solely from a matter of administration. *Baines* v. *McGee*, 1 S. & M. 208.

No administrator *de bonis non* on the estate of Robert Steen, could have been required to make settlement of the estate of his predecessor, his duties being confined to the administration of the property remaining in specie unadministered. Such administrator could not even receive an ascertained balance due by the first administrator. *Kelsey* v. *Smith*, 1 How. 68; *Prosser* v. *Yerby*, Ib. 87; *Byrd* v. *Holloway*, 6 S. & M. 325.

The balance in his hands, if any, being unascertained, no suit on the administration bond of William Steen could be maintained by the distributees, until such settlement was made, and his liability ascertained by probate decree. *Green* v. *Tunstall*, 5 How. 651, 652, and authorities there cited.

The probate court alone had jurisdiction of the matter, and the personal representative of William Steen was the only party authorized or liable to make such settlement. *Noel* v. *Noel*, 2 Greenl. R. 75; *Hamaker's Estate*, 5 Watts, R. 204; Ib. 228; Chilton's Prob. C. 327.

Such was the practice in the English ecclesiastical courts. See authorities cited in 2 Greenl. R. 75. So in this State, *Judge of Probate* v. *Phipps*, 5 How. 59, was a suit against an administrator to enforce payment of a decree of probate court, rendered against him on a final settlement of the administration account of his intestate, made by him after the death of his intestate, and at the call of the distributees.

The same principle is recognized in *Byrd* v. *Holloway*, 6 S. & M. 325, where the application of the administrator *de bonis non* was rejected.

See late decisions in *Jones et ux.* v. *Irvine's Executor*, 1 Cushm. 361, and in *Pendleton, Administrator*, v. *Prestidge, Administrator*, directly to the point. 2 Cushm. 80; 7 Eng. Cond. Chan. R. 144; 2 Eccl. R. 56, 283; 2 Lomax, Ex'rs, 308.

There is nothing of which plaintiff in error can complain here, in the matter of the account as finally settled and allowed against him. If any items were improperly allowed or rejected, the fact is not shown by the record; the claims and vouchers are not set forth, no exceptions were taken, and the account cannot be investigated here. If the instructions given in the order

referring the account to the auditors be considered erroneous, as we think they cannot be, it will not avail the plaintiff in error, for it does not appear there was any item of account, the allowance or disallowance of which was based upon the erroneous direction, and he must show error to his prejudice.

5. In this case, due notice to all creditors and others was given of the proceedings for a settlement; no objection was interposed, except by plaintiff in error; creditors there appear to have been none at the date of the proceedings, and if there were any, they were barred by failure to appear. There is no ground of error in the proceedings.

The counsel for appellant attempts to bring this case within the rule laid down in *Smith* v. *Denson*, 2 S. & M. 326. In that case, the petition set out a probate order, and alleged it was void for want of citation. The answer did not admit the charge, and the court held it should have been proved. But in this case we admit no final settlement, and plaintiff in error only pretends that it was intended for a final settlement, and it was for him to prove it. Here are infants, and you can presume nothing against them. They could not even appear, consent, or waive any thing.

On the subject of interest, see 13 S. & M. 306. No exceptions were taken to the report, as the law requires. Hutch. Co. 663, § 18.

Mr. Justice YERGER delivered the opinion of the court.

In the year 1837, Robert Steen departed this life, and letters of administration upon his estate were taken out at the February term, 1837, of the probate court for Rankin county, by William Steen. William Steen also died, and letters of administration upon his estate were granted by the same court to Silas Steen.

The appellees, who are distributees of the estate of Robert Steen, filed a petition in that court, at the August term, 1847, alleging that " William Steen, as administrator, &c., was cited by the probate court of said county, to the April term, 1841, thereof, to make settlement of his administration of said estate,

and afterwards, at the June term, 1841, without any notice to the petitioners, and without any notice by publication or advertisement, as required by law, of his intention to make settlement of said estate, or to file an account of final settlement of his administration thereon, at said June term, 1841, and wholly unknown to petitioners, though then citizens of Rankin county, and relations and neighbors of said administrator, the said William Steen presented a pretended account of his administration to said court," which pretended account, it is averred, " is wholly irregular, unjust, and fraudulent, and unsupported by any legal voucher, and was never examined, audited, or allowed, as required by law, and was and is, as a final settlement of the administration of said William Steen, wholly fraudulent and void."

The petition further prayed, that Silas Steen, administrator, &c. of William Steen, be cited before the court, " to make a final settlement of the administration of his intestate, William Steen, upon the estate of said Robert Steen, deceased, according to law."

Silas L. Steen, the administrator, &c. of William Steen, appeared and answered this petition, stating that " William Steen did present an account of his administration to the probate court of Rankin county, which was intended for a final settlement of said estate, and the said account was by the court received and ordered to be recorded as a final settlement, but that he had no certain knowledge or information as to what notice was given previous to the presenting and receiving said account;" and he submits to the court, whether he shall make any further settlement of the administration of William Steen upon the estate of Robert Steen, deceased.

It appears from Exhibit E. to the petition, that at the June term, 1841, of the probate court of Rankin county, William Steen presented what purports to be "the account of William Steen, administrator, &c. of Robert Steen." Upon this account is an entry or memorandum in these words : " Received and ordered for record. W. D. Hathorne, Clerk."

On this state of facts, an order was made by the probate

court at the September term, 1847, "that the prayer of the petition be granted; that the account for final settlement of the estate of Robert Steen, deceased, filed at the June term, 1841, of said court be rejected and disallowed; and that said Silas Steen, as administrator of said William Steen, deceased, be required to make final settlement, according to law, of the administration of his intestate, William Steen, on the estate of said Robert Steen."

In pursuance to this order, Silas Steen made a final settlement at the March term, 1848, showing a large balance against William Steen, as administrator of Robert Steen; and a final decree, allowing the same, was made. From the final decree, so rendered, Silas Steen, administrator of William, has appealed to this court.

The main questions, pressed in argument upon the court, were :

First. Was the account presented by William Steen at the June term, 1841, examined and allowed as a final settlement of his accounts as administrator, and as such conclusive as the judgment of a court of competent jurisdiction against the claim of petitioners ?

Second. If not final and conclusive, can Silas Steen, as administrator of William Steen, be required by the probate court to render an account of William Steen's administration on the estate of Robert Steen ?

Upon the first point, it may be remarked, that we do not think the record shows that the account presented by William Steen in June, 1841, ever was "examined and allowed" by the court; and it is not, therefore, in our opinion, any bar to the relief sought by the petitioners. The only entry or memorandum whatever shown by the record in relation to this account, is an entry made upon the account itself in these words: "Received and ordered for record." To this memorandum the signature of the clerk is attached; but it is entirely without date, was not entered upon the minutes of the court, and cannot, therefore, be regarded by us as the order or judgment of the court.

In the case of *Moore et ux.* v. *Carson*, 1 How. R. 60, Ch. J. Sharkey declares, that " nothing can be a decree of the orphans' court, unless it be made in term time, and duly entered as such on the records of the court." The memorandum in this case is without date. It may or may not have been made in term time. How that fact is, the record does not show. It is not entered upon the minutes of the court, and may have been made by the clerk during vacation, without any order or judgment of the court in the premises. We cannot, therefore, regard it at all in the light of an order or judgment of the court, and do not, therefore, consider it as evidence of a settlement or allowance of the account by the court.

But if the entry before us had been made in the same words on the minutes of the court, instead of being made upon the account of William Steen, we still would not consider it as an order or judgment of the court, allowing the account filed as the final settlement of the administrator. •

Among other provisions of the statute, in relation to the allowance of accounts by administrators, guardians, &c., one will be found in these words: " And the court, on due proof of notice as aforesaid, and no objection being made to the account as stated, may decree an allowance thereof." Hutch. Co. 682, § 12.

Now it is manifest, that a mere order, though entered upon the minutes of the court, that the account of an administrator be " received and ordered for record," is not an order or decree of " allowance." The account may have been received, and may have·been ordered to be recorded, and yet the judicial mind never have passed or decided upon the question of " allowing or disallowing" it. To hold, that an order that an account be " received and recorded," is equivalent to an order of " allowance," would affix a meaning to those words which they do not import, and which we do not think it would be proper to give them.

The account may have been " examined and allowed" when it was " received and ordered for record ; " but the record contains no legal evidence of that fact; and a mere inference or

presumption that it may have been so, is not sufficient, where the law has provided that the record itself must contain the evidence.

But again, if the record before us had contained an order of " allowance" in proper form entered upon the minutes of the court, we would be compelled to treat it as a nullity, because notice was not given, as required by law, to the parties to be affected by it.

It has been repeatedly held by this court, that no judgment is valid or binding against a party, unless he had notice, either actual or constructive, of the proceeding against him. Without such notice, the court giving the judgment had no jurisdiction of the person, and the judgment is, therefore, a nullity, for want of jurisdiction. It is also a fixed rule on this subject, that the record of the judgment must show upon its face that the court did have jurisdiction of the person. Unless it so appears, the judgment is a nullity; for it will not be presumed that the court had jurisdiction of the person, unless the record shows the fact.

In this State, actual notice is not required to be given by an administrator to the parties interested, of the presentment of his final account for allowance. The statute has prescribed the mode and manner in which notice shall be given ; and, as before stated, has declared, that the " court, upon due proof of such notice, and no objection being made to the account as stated, may decree an allowance."

In the case of *Moore et ux.* v. *Carson,* before cited, the court held, that an order or judgment allowing the account of a guardian was void, because the record did not show that notice had been given, as required by law. The record was declared not to be evidence of a judgment in a collateral proceeding.

The statute on the subject of notice, and the allowance of the accounts of guardians, is the same as that relating to administrators. We cannot, therefore, in principle, distinguish the two cases from each other.

It is certainly true, as contended by counsel, that the judgments of courts acting " *in rem* " are valid, without actual notice ; and this upon the principle, that the seizure of the

" thing " about which the court adjudicates, is constructive no-tice to all persons interested in it to appear and make known their claim. Public policy requires this rule in the class of cases to which it has been applied.

But the probate court, in making a final settlement of a guardian's or administrator's accounts, does not proceed "*in rem.*" There is no " thing " which the court seizes and acts upon. The judgment or decree, when pronounced, is personal, and acts *in personam*, either charging or absolving the party from liability.

The judgment or order granting letters testamentary, or of administration, may be considered a proceeding "*in rem.*" But in no just or proper sense, can the order or judgment of the court, settling and allowing the accounts, be treated as such a proceeding, any more than a bill in chancery for an account.

We do not think, therefore, that there is any judgment or decree which bars the right of petitioners to call for an account.

This brings us to the consideration of the second question: Can the administrator of William Steen be required by the probate court to make a settlement of William Steen's accounts as administrator of Robert Steen ?

In the lifetime of William Steen, the probate court had exclusive jurisdiction over the settlement of his accounts as administrator. But he died without having made such settlement. In his lifetime, the distributees of Robert Steen's estate could have required him to make a settlement and dis-tribution of the estate, by application to the probate court, and they could not have required him to account in any other court. Has his death ousted the jurisdiction of that court? In the case of *Jones and Wife* v. *Walter Irvine's Executors*, it was held, that legatees and distributees could maintain no action upon the administration bond of a deceased adminis-trator, until a final settlement had been made of his adminis-tration accounts. 1 Cushm. 361.

The counsel for the appellants admit the correctness of this decision, but say, that the administrator of the deceased administrator must be called upon to account in the chancery,

and not in the probate court. We listened with pleasure to the able argument on this point, but we cannot subscribe to its validity.

In the case of *Jones & Wife* v. *Irvine's Executors*, before referred to, although the question was not necessarily adjudicated, we expressed our opinion, that the probate court had jurisdiction to compel the administrator, as executor of a deceased executor or administrator, to settle the administration accounts of such deceased testator or intestate, in order that the distributees of the first estate might proceed, if necessary, upon the bond. A further examination of the question has strengthened the opinion then expressed.

This conclusion has been reached by us, after a full examination of the various cases cited by counsel upon either side; but in stating the result to which our minds have come, we have not deemed it necessary to refer to those cases, while we think the adjudged cases in other States and in the ecclesiastical courts in England, though not entirely harmonious, would sustain the view we entertain. We prefer to rest our opinion upon what we believe to be the proper construction of the constitution of this State, and of the former adjudications of this court.

By the constitution of this State it is declared, that the probate court shall have "jurisdiction in all matters testamentary and of administration, in orphans' business and the allotment of dower, in cases of idiotcy and lunacy, and of persons *non compos mentis.*"

This court has repeatedly decided, that this clause in the constitution confers exclusive jurisdiction upon the probate court, in matters testamentary and of administration. 2 How. R. 856; 3 Ib. 252; 5 S. & M. 530.

It has also held, that it has exclusive jurisdiction in the settlement of the accounts of administrators, guardians, &c. See same cases.

In the lifetime of William Steen it is beyond dispute, that under the constitution and laws of this State, the probate court had full, complete, and exclusive jurisdiction in the settlement of his accounts as administrator of Robert Steen.

45*

How has his death made any change in this particular? Is the settlement of those accounts a matter of administration or not, and if so, by whom must they be settled? One thing is very clear according to former decisions, until there is a final settlement of the accounts of William Steen, no action can be maintained by the distributees to charge his sureties upon his administration bond. It is necessary, therefore, that this settlement should be made, and an account be rendered. By whom must this be done? It will not be pretended that it can be done by any other person than his administrator. In his lifetime it was the duty of William Steen to have rendered to the probate court a full and final account of his proceedings as administrator. It was one of his duties as administrator, for the due performance of which he was personally bound. Having died without having performed this duty, his personal representative must necessarily perform it.

Now, as the examination and allowance of the accounts of an administrator is a jurisdiction which pertains exclusively to the probate court, before which the administrator in his lifetime could only be called upon to account, and as he died without having rendered an account, thereby making it the duty of his administrator to render it in his stead, we think reason and sound policy both indicate, that the representative should render it in the same tribunal before which, and which alone, the party whom he represents could have been required to appear in his lifetime.

We are unable to perceive any valid reason why the probate court should not entertain jurisdiction in a case of this kind.

By the grant of letters of administration to William Steen, the probate court of Rankin county obtained jurisdiction over him as administrator, and over his proceedings as such, with the right and power to compel him to settle and account therein in relation to them. Having thus obtained jurisdiction over his person and over the subject-matter, to wit, his administration of the estate of Robert Steen, including an account and settlement thereof, his death, in our opinion, does not oust the jurisdiction once obtained, but the jurisdiction properly

.continues in that court, until there is a full account rendered and a final settlement made of his acts and dealings as administrator. We are, therefore, of opinion, that the probate court had jurisdiction in the present case, and was fully empowered to require Silas Steen, as administrator of William Steen, to account in the matter of William Steen's administration of the estate of Robert Steen.

The decree of the probate court will, therefore, be affirmed.